Addington *v.* The Western & · Atlantic Railroad Co.

It was error for the court to direct a verdict for the defendant on the
    facts in evidence, the parol evidence having been admitted with-
    out objection, and the statute of frauds not being pleaded. It was
    not so clear that the plaintiff was not entitled to recover at least
    nominal damages as to exclude all reasonable inference to the
    contrary.

· March 19, 1894. Argued at the last term.

Action for damages. Before Judge Milner. Whit-
field superior court. April term, 1893.

W. K. Moore and B. Z. Herndon, for plaintiff.

Payne & Tye and R. J. & J. McCamy, for defendant.

Lumpkin, Justice.

·. Addington brought an action against the Western
& Atlantic Railroad Company for the alleged. breach of
a contract, by the terms of which the defendant had
agreed to give him permanent employment in its ser-
·vice, in consideration of his releasing the company from
all claim for damages resulting from a personal injury
inflicted upon him.

In support of the declaration, he proved that he had
been seriously injured while in the service of the com-
pany, and that the company's superintendent, J. L.
McCollum, in consideration of his releasing the com-
pany as above mentioned, had agreed to give him "per-

manent employment on the road, at least so long as he held his position as superintendent "; that before receiving the injury, plaintiff was earning about $62 per month, on an average; that in pursuance of the aforesaid agreement, he was employed for a while in the yard of the defendant to do some light work, and in a month or two, was given a position as brakeman on the road, but shortly afterwards was discharged, without fault on his part. It also appeared from the plaintiff's evidence that, some time after his discharge, he had been able to earn a dollar a day at a saw-mill, and at the time of the trial he was earning eight dollars a month on a farm. There was, however, no proof as to what wages were paid the plaintiff for services rendered by him to the company after the injury, or as to what his services were worth at any time between the date of his injury and the date of his discharge. Neither was there any direct and positive proof introduced by the plaintiff to show that, at the date of his discharge from the defendant's service, J. L. McCollum was still the superintendant of the company.

The defendant introduced in evidence a paper of which the following is a copy: "While employed by the Nashville, Chattanooga & St. Louis Railway, lessee of the Western & Atlantic Railroad Company, upon its road, I was injured on or about the 5th day of April, by getting knocked off of train at E. T., V & G. crossing. And the Nashville, Chattanooga & St. Louis Railway, lessee of the Western. & Atlantic Railroad, having paid me one hundred and twenty-eight dollars and ninety-five cents, in full of all wages due me to date, and in full for all damages which I have sustained on account of said injury, I hereby acknowledge receipt of said sum in full satisfaction, as aforesaid, and in full of all demands to this date. [Signed] H. W. Addington. Atlanta, Ga., May 13th, 1891."

The plaintiff was then allowed, without objection, to testify that he signed the paper, and was fully aware of its contents when he did so, but that, nevertheless, the main consideration of his signing was not the money paid to him, but the promise and undertaking of the superintendent to give him permanent employment, as already testified, and that all this was well understood and agreed to by the superintendent, acting for the company.

Whether the plaintiff was estopped by the above written instrument from proving that the contract to employ him was the main consideration which induced him to sign this paper; or if not, whether the case falls within the statute of frauds, are questions not before us for determination. As already stated, there was no objection to the proof indicated, nor was there any plea of the statute of frauds. The only question, therefore, is: was the plaintiff, upon the naked merits of the case, entitled to a recovery?

We do not think it so clearly appeared that he was not entitled to at least nominal damages as to authorize the court to direct a verdict against him. He certainly proved the contract, and also a breach of it, unless the continuance of McCollum in his position as superintendent of the company up to the time of the plaintiff's discharge was an essential fact. If it was not, the proof of the breach was complete. If it was, then, though it was not affirmatively shown that McCollum was still in the service of the company as superintendent at the time of the plaintiff's discharge, we are not prepared to say there were no facts in evidence from which the jury might not have reasonably so inferred. This being so, they would have been authorized by the evidence, aided by reasonable inference therefrom, to find that there was a breach of the contract, and this would have entitled the plaintiff to nominal damages.

While the evidence does not seem to afford any basis for the computation of other and further damages, we think it was error, under the circumstances, for the court to direct a verdict. As the jury might have found the plaintiff was entitled to nominal damages, the court had no right to deprive him of his right to recover them. Had the case been submitted to the jury and they had found against the plaintiff generally, it would have been proper to allow the verdict to stand; and even if it plainly appeared that he was entitled to nominal damages only, and the court had refused a new trial, we would not reverse the trial court because of such refusal, it having been repeatedly ruled by this court that a new trial will not be ordered simply to allow a plaintiff an opportunity to recover merely nominal damages. We are not, however, aware of any precedent authorizing the trial court to deprive a plaintiff of his right, in the first instance, to recover such damages. To so hold would put it within the power of trial judges to prevent, in any case, a recovery of nominal damages, and thus render the law authorizing the recovery of such damages practically inoperative.

We quote, as appropriate in this connection, the following from Marcy, J., in Herrick v. Stover, 5 Wend. 587: "It is said by Ashurst, Justice, in Edmonson v. Machell, that 'an application for new trial is an application to the discretion of the court, who exercise that discretion in such a manner as will best answer the ends of justice.' But where a record is brought into this court for revision, and error is found in it, is it a matter of discretion in us whether we will correct that error or not? I have always supposed that the party who has been affected by an error, be the extent of that injury ever so small, can require of us ex debito justitiæ to correct it." And in Wilson v. Rastall, 4 T. R. 758, Lord Kenyon said: "There is not a single instance where a

.new trial has been refused in a case where the verdict has proceeded on the mistake of the judge. Where, indeed, the jury have formed an opinion upon the whole case, no new trial in a penal action has been granted, .though the jury have drawn a .wrong conclusion; so, .too, in ordinary, where the damages are small, and the question too inconsiderable to be re-tried, the court has . frequently refused to send the case back to another jury. But wherever a mistake of the judge has crept in, and swayed the opinion of.the jury, I do not recollect a single case in which the court has ever refused to grant a new trial." These cases are cited in a note .in 3 Graham & Waterman on New Trials, page 1170.. ·

While the case, as now presented, appears to have but little merit, we feel constrained, upon principle, to order a new trial, so that the rights of the plaintiff, .whatever they are, may be passed upon and determined by a jury. It is.more important for the courts to uphold the great right of trial by jury than for any particular party to win or lose a given case. *Judgment reversed.*